EMPRESA NACIONAL SIDERÚRGICA, S.A. and the Government of Spain, Plaintiff,

v.

UNITED STATES, Defendant,

Bethlehem Steel Corp., Geneva Steel, Gulf States Steel Inc. of Alabama, Inland Steel Industries, Inc., Lukens Steel Co., Sharon Steel Corp., and U.S. Steel Group a Unit of USX Corp., Defendant–Intervenors.

No. 93–09–00630–AD.
Slip Op. No. 95–33.

United States Court of International Trade.

March 6, 1995.

George V. Egge, Jr., P.C., Washington, DC (George V. Egge, Jr.), for plaintiff.

Ackerson & Bishop Chartered, Washington, DC (Frederick P. Waite, M. Roy Goldberg, and Stewart A. Block) for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Velta A. Melnbrencis), Stephen J. Powell and Thomas H. Fine, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel, for defendant.

Dewey Ballantine, Washington, DC (Alan Wm. Wolff, Michael H. Stein, Scott L. Forseth, and Linda C. Menghaetti), for defendant-intervenors.

Skadden, Arps, Slate, Meagher & Flom, Washington, DC (Robert E. Lighthizer and John J. Mangan), for defendant-intervenors.

## MEMORANDUM OPINION

DiCARLO, Chief Judge:

Plaintiff, Empresa Nacional Siderúrgica, S.A. (ENSIDESA), moves for judgment upon an agency record pursuant to USCIT R. 56.2, challenging the final determination of the United States Department of Commerce that imports of certain cut-to-length carbon steel plate from Spain are being sold in the United States at less than fair value. *Final Determinations of Sales at Less Than Fair Value: Certain Cold–Rolled Carbon Steel Flat Products and Certain Cut–to–Length Carbon Steel Plate From Spain,* 58 Fed.Reg. 37,211 (Dep't Comm.1993). This court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

ENSIDESA concedes that Commerce was required to apply best information available (BIA) for data which ENSIDESA did not submit. *See* 19 U.S.C. § 1677e (1988); 19 C.F.R. § 353.37 (1994). However, ENSIDESA challenges Commerce's choice of BIA. According to plaintiff, Commerce erred by (1) refusing to grant a two-week extension to ENSIDESA to allow them additional time to complete the Cost of Production (COP) and Constructed Value (CV) section of the Antidumping Questionnaire (Part "D"); and, (2) designating ENSIDESA an "uncooperative respondent" when ENSIDESA was unable to submit a response in the time allotted, requiring the selection of the margin calculated in the preliminary determination as BIA.

## BACKGROUND

In response to plaintiffs' petition, Commerce initiated an antidumping investigation of cold-rolled steel and cut-to-length steel plate imports from Spain. *See Initiation of Antidumping Duty Investigations and Postponement of Preliminary Determinations: Certain Hot–Rolled Carbon Steel Flat Products, Certain Cold–Rolled Carbon Steel Flat Products, Certain Corrosion–Resistant Carbon Steel Flat Products, and Certain Cut–to–Length Carbon Steel Plate From Various Countries,* 57 Fed.Reg. 33,488 (Dep't Comm. 1992). ENSIDESA was the only Spanish company being investigated. The period of investigation was January 1, 1992 to June 30, 1992. The range of dumping margins alleged in the petition varied from 18.76 percent to 72.74 percent. (Pub.Doc. 2, Petition, at 14.)

Commerce initiated an investigation to determine whether ENSIDESA was selling its products in the home market below cost of production, as defined by 19 U.S.C. § 1677b(b) (1988). On January 7, 1993, Commerce transmitted Section D of the Antidumping Questionnaire to ENSIDESA, requesting COP and CV information. Responses were due no later than February 8, 1993.

On January 26, 1993, Commerce reached its preliminary determination. *Notice of Preliminary Determinations of Sales at Less Than Fair Value and Postponement of Final Determinations: Certain Cold–Rolled Carbon Steel Flat Products and Certain Cut–to–Length Carbon Steel Plate From Spain,* 58 Fed.Reg. 7120 (Dep't Comm.1993).

The preliminary margins were 41.81 percent *ad valorem* for cold-rolled steel and 105.61 percent *ad valorem* for cut-to-length steel plate. *Id.* at 7121–22.

On February 5, 1993, ENSIDESA requested a four-week extension in which to respond to the COP/CV Questionnaire. (Pub.Doc. 104, Letter from Counsel for ENSIDESA to Commerce, Feb. 5, 1993, at 1.) Commerce granted an extension, but only until February 16, 1993. (Pub.Doc. 105, Letter from Commerce to Counsel for ENSIDESA, Feb. 5, 1993.) ENSIDESA then requested an additional two week extension. Commerce denied the request, and informed ENSIDESA that if they failed to provide the information by February 16, 1993, Commerce "may have to" resort to BIA. (Pub.Doc. 111, Letter from Commerce to Counsel for ENSIDESA, Feb. 11, 1993.)

On the day the responses were due, ENSIDESA informed Commerce that it would not respond to Section D. (Pub.Doc. 114, Letter from Counsel for ENSIDESA to Commerce, Feb. 16, 1993, at 1.) Commerce consequently designated ENSIDESA uncooperative. *Final Determinations* at 37,-212. Commerce rejected ENSIDESA's responses to Sections A, B, and C, contending the information was rendered useless by the absence of the COP/CV responses in Section D. *Id.* Commerce applied, as BIA, the margin calculated in the Preliminary Determination—105.61 percent *ad valorem*—for cut-to-length steel plate, and used the highest margin alleged in the petition—43.12 percent *ad valorem*—for cold-rolled steel. *Final Determinations,* 58 Fed.Reg. at 37,212–13.

On August 9, 1993, the United States International Trade Commission determined, pursuant to 19 U.S.C. § 1673d(b) (1988), that imports of carbon steel plate from Spain were causing or threatened to cause material injury, but that cold-rolled carbon steel flat products were not. *Certain Flat–Rolled Carbon Steel Products From Argentina, Australia, Austria, Belgium, Brazil, Canada, Finland, France, Germany, Italy, Japan, Korea, Mexico, the Netherlands, New Zealand, Poland, Romania, Spain, Sweden, and the United Kingdom,* 58 Fed.Reg. 43,905, 43,905 (Dep't Comm.1993). The resulting antidumping duty order therefore only covered cut-to-length steel plate. *Antidumping Duty Order: Certain Cut–to–Length Carbon Steel Plate from Spain,* 58 Fed.Reg. 44,167, 44,167 (Dep't Comm.1993).

## DISCUSSION

This court shall uphold Commerce's final determination in an antidumping duty investigation unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). It "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) (citations omitted).

*1. Denial of ENSIDESA'S Request for an Extension of Time*

■ ENSIDESA argues Commerce erred in denying ENSIDESA's request for a second extension of two weeks. According to ENSIDESA, it had justifiable and compelling reasons for requesting the extension. First, ENSIDESA argues, the steel industry in Spain was undergoing major restructuring and the resulting attrition of personnel impaired ENSIDESA's ability to respond to the COP/CV Questionnaire. Second, ENSIDESA claims it had substantial resources already committed to the concurrent countervailing duty investigation. During the two-week period immediately prior to the deadline for submission of the COP/CV Questionnaire, ENSIDESA's key personnel were preparing for Commerce's verification visit in the concurrent investigation. (Pls.' Mem.Supp.J.Agency.R. at 7–9.)

ENSIDESA further asserts Commerce would not have suffered substantial hardship if the requested extension had been granted. Commerce still would have had 113 days to complete the investigation. The remaining tasks for Commerce were to conduct verification, hold a public hearing, and reach a final determination.

In support of its argument, ENSIDESA cites a number of cases wherein courts held an agency's refusal to grant a requested delay to be an abuse of the agency's discretion. *See New York Shipping Ass'n v. Federal Maritime Comm'n,* 628 F.2d 253, 260 (D.C.Cir.1980) (reversing Commission's determination after finding that Commission failed to grant plaintiff extensions already granted to similarly situated companies); *Castaneda–Delgado v. INS,* 525 F.2d 1295, 1300 (7th Cir.1975) (holding failure to grant extension to enable party to obtain counsel violates procedural due process); *Texas v. EPA,* 499 F.2d 289, 317–18 (5th Cir.1974), *cert. denied,* 427 U.S. 905, 96 S.Ct. 3191, 49 L.Ed.2d 1199 (1976) (holding it arbitrary and capricious for agency to fail to grant a region an extension of time to meet federal standards). Unlike in an antidumping investigation context, however, none of the cited cases involve a situation where the agency was bound by statutory time constraints.

Congress has imposed strict statutory deadlines upon Commerce in antidumping investigations. *See* 19 U.S.C. § 1673d(a) (1988). The statute mandates that Commerce issue its final determination within 75 days of the preliminary determination. 19 U.S.C. 1673d(a)(1). This deadline may not be extended beyond 135 days from the date of the preliminary determination. 19 U.S.C. § 1673d(a)(2). In this investigation, Commerce had 135 days in which to issue its final determination. *See Preliminary Determinations,* 58 Fed.Reg. at 7120.

To enable Commerce to meet its statutory deadline, Section 353.31(b)(2), title 19, Code of Federal Regulations, permits Commerce to "specify the time limits for response." 19 C.F.R. § 353.31(b)(2) (1993). The regulation further advises against the granting of extensions of time under ordinary circumstances. *See* 19 C.F.R. § 353.31(b)(3) (providing that,

"[o]rdinarily, the Secretary will not extend the time limit stated in the questionnaire").

This investigation was but one of a large number of concurrent steel investigations that involved Commerce in "an unusually intensive and demanding period of work." *Usinor Sacilor v. United States,* 18 CIT ——, ——, 872 F.Supp. 1000, 1008 (1994). To complete the large number of investigations within statutory time limits and allow Commerce time to verify the submitted information, Commerce required parties to strictly observe the deadlines for submitting information. The unusually high volume of work involved in the steel investigations made it more difficult for Commerce to accommodate particular respondents by granting extensions. Despite these difficulties, Commerce nevertheless granted ENSIDESA an extension of time for completing the COP/CV section of the Questionnaire. Commerce was not obligated, by statute, regulation, or prior precedent, to further accommodate ENSIDESA.

Given the statutory time constraints imposed upon Commerce, its discretion in imposing time limits for responses, and the large number of concurrent investigations, the court finds Commerce did not abuse its discretion in denying ENSIDESA's second request for additional time.

## 2. *Total v. Partial BIA*

■ ENSIDESA argues that Commerce's application of "total" BIA was improper. According to ENSIDESA, Commerce should have applied "partial" BIA as a substitute for the omitted COP/CV data.

ENSIDESA's failure to submit a Section D response deprived Commerce of necessary cost data, rendering Commerce unable to determine which home market sales, if any, could be used to determine FMV. *Final Determinations* at 37,212; *See Notice of Final Results of Antidumping Administrative Review: Certain Fresh Cut Flowers From Mexico,* 56 Fed.Reg. 29,621, 29,624 (Dep't Comm.1991). As Commerce was unable to calculate FMV, it had no data to compare to the U.S. sales information timely provided. *Final Determinations* at 37,212. Under the

circumstances, Commerce could properly resort to total BIA.

### 3. Cooperative v. Uncooperative Designation

■ In its Final Determination, Commerce designated ENSIDESA an "uncooperative respondent," due to ENSIDESA's failure to provide the COP/CV information requested in Section "D" of the Questionnaire. *Id.* at 37,211. Commerce's regulations permit it to take into account the degree of cooperation by a respondent in determining what constitutes BIA. 19 C.F.R. § 353.37(b) (1994). ENSIDESA alleges this designation was in error, because (1) ENSIDESA cooperated to the fullest extent possible, but was unable to complete the Questionnaire in the time provided; and (2) the designation ignores ENSIDESA's otherwise thorough responses in the investigation.

According to ENSIDESA, its position is analogous to that of the respondent in *Allied–Signal Aerospace Co. v. United States,* 11 Fed.Cir. (T) ——, 996 F.2d 1185 (1993). In *Allied–Signal,* Commerce designated the respondent "uncooperative" and applied the tier of BIA that resulted in a more adverse rate than that applicable to cooperative respondents. The court remanded Commerce's determination, finding that the respondent had cooperated as fully as possible, but was unable to provide the requested information due to factors beyond its control. The court based its decision upon the respondent's limited financial resources, the costing system in place at the time of the investigation, and the respondent's disclosure to Commerce, prior to commencement of the review, of its inability to respond and the reasons for that inability. *Id.* 996 F.2d at 1192–93.

The instant case is distinguishable from *Allied–Signal.* Unlike ENSIDESA, the respondent in *Allied–Signal* "apparently ha[d] no ability to respond more completely than it ha[d] already done." *Id.* at 1193. The respondent was a "small compan[y] that found participation in a full review difficult and financially burdensome." *Id.* In contrast, ENSIDESA is a large and sophisticated company with a demonstrated ability to participate in an antidumping investigation. *See*

*Final Determination of Sales at Less Than Fair Value; Certain Carbon Steel Products From Spain,* 49 Fed.Reg. 48,582 (Dep't Comm.1984).

In addition, the respondent in *Allied–Signal* played a substantially more cooperative role in the investigation than did ENSIDESA. Prior to the investigation in *Allied–Signal,* the respondent had informed Commerce it would be unable to respond fully and had sought Commerce's advice as how to satisfy the information request. ENSIDESA, on the other hand, did not request an extension of time until the last business day before the information was due. (*See* Pub. Doc. 104, Letter from Counsel for ENSIDESA to Commerce, Feb. 5, 1993, at 1.) While Commerce did not grant the full extension requested, it still provided ENSIDESA with an additional eight days in which to respond. (*See* Pub.Doc. 105, Letter from Commerce to Counsel for ENSIDESA, Feb. 5, 1993.) Despite this extension, on the day the information was due, ENSIDESA informed Commerce it would not be submitting any of the COP/CV data requested.

ENSIDESA further argues that Commerce's decision to label it uncooperative fails to take into account ENSIDESA's previous extensive cooperation. ENSIDESA points out that it responded in a timely manner to Sections A, B, and C of Commerce's Questionnaire, submitting over 4,700 pages of narrative responses and 171 exhibits. (Pls.' Mot.Supp.J.Agency R. at 14.) According to ENSIDESA, a methodology that fails to take into account previous extensive cooperation during the investigation contravenes the remedial purpose of the BIA rule, i.e., to foster full cooperation. *See Nippon Pillow Block Sales Co. v. United States,* 17 CIT ——, ——, 820 F.Supp. 1444, 1453 (1993); *Tianjin Mach. Import & Export Corp. v. United States,* 16 CIT 931, 938, 806 F.Supp. 1008, 1016 (1992). ENSIDESA argues that Commerce should have disregarded the margin calculated in the preliminary determination, and selected, as BIA, a rate chosen from the range of dumping margins alleged in the petition.

Selecting from the rates in the petition would reward ENSIDESA for its non-com-

pliance. The highest rate alleged in the petition for the cut-to-length steel plate, 72.74 percent, is far below the 105.61 percent margin calculated in the Preliminary Determination. Commerce is not required to provide ENSIDESA with such a benefit, nor do ENSIDESA's actions merit a reward. If ENSIDESA had provided the cost-of-production data, any below-cost-of-production sales removed from Commerce's calculations would have increased the dumping margin, to ENSIDESA's detriment. To require Commerce to select a BIA rate lower than the rate calculated in the Preliminary Determination in this circumstance would run counter to the purpose of the BIA rule—to induce full cooperation.

ENSIDESA's cooperation was not comparable to that of the respondent in *Allied–Signal*. While ENSIDESA timely submitted all the material previously requested, its failure to provide COP/CV information was not due to an "inability" to supply the information. Commerce's designation of ENSIDESA as uncooperative is supported by substantial evidence and otherwise in accordance with law.

## CONCLUSION

The court finds Commerce's determination proper. The court denies ENSIDESA's request for judgment upon an agency record pursuant to USCIT R. 56.2, and affirms Commerce's determination.

## *JUDGMENT ORDER*

The case having been submitted for decision, and upon due deliberation, it is hereby

ORDERED that plaintiff's motion for judgment upon the agency record pursuant to USCIT R. 56.2 is denied, and it is further

ORDERED that the final determination of the United States Department of Commerce, 58 Fed.Reg. 37,211, as to certain imports of cut-to-length steel plate from Spain is affirmed, and it is further

ORDERED that the action is dismissed.